IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Auto-Owners Insurance Company and | § | |
| Home-Owners Insurance Company, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| Josue Castaneda; Pedro Damian Cruz; | § | |
| Jose Gonzalez, Jr.; West Eldorado TX | § | |
| Partners, LLC; Cortland Partners, L.P.; | § | |
| Cortland Management, LLC; Cortland | § | |
| Partners Fund I Manager, LLC; | § | |
| Cortland Partners Fund II Investor, LLC; | § | |
| Cortland Partners Fund II Manager, | § | |
| LLC; Cortland Partners Fund II, LLC; | § | |
| Diversified Trading Solutions, LLC; | § | |
| Level 10 Construction, LLC; | § | |
| John J. Koval; and Jane Doe, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

To the Honorable United States District Court:

COME NOW, Auto-Owners Insurance Company and Home-Owners Insurance Company, Plaintiffs in the above-styled matter, and file this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

## PARTIES

1.      Auto-Owners Insurance Company ("Auto-Owners") is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Michigan.

2.      Home-Owners Insurance Company ("Home-Owners") is a corporation organized

and existing under the laws of the State of Michigan with its principal place of business in Michigan.

3.    Jose Castaneda ("Castaneda") is a natural person who is a citizen of the United States, who is physically present in Texas, who resides in Cameron County, Texas, who intends to make Texas his home, and who is an individual citizen of the State of Texas. Defendant Castaneda is subject to the jurisdiction and venue of this Court.

4.    Pedro Damian Cruz ("Cruz") is a natural person who is a citizen of the United States, who is physically present in Texas, who resides in Cameron County, Texas, who intends to make Texas his home, and is an individual citizen of the State of Texas. Defendant Cruz is subject to the jurisdiction and venue of this Court.

5.    Jose Luis Gonzalez Jr. ("Gonzalez") is a natural person who is a citizen of the United States, who is physically present in Texas, who resides in Cameron County, Texas, who intends to make Texas his home, and who is an individual citizen of the State of Texas. Defendant Gonzalez is subject to the jurisdiction and venue of this Court.

6.    West Eldorado Tx Partners, LLC ("Eldorado") is a limited liability company formed under the laws of the State of Delaware with its principal place of business in the State of Georgia. Based on information and belief, the individual members of Eldorado are Portfolio Investors, LLC and Steven DeFrancis. Based on information and belief, Steven Defrancis is the sole member of Portfolio Investors, LLC, which is formed under the laws of the State of Delaware with its principal place of business in Georgia. Steven DeFrancis is a natural person who is a citizen of the United

States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Eldorado is subject to the jurisdiction and venue of this Court.

7.   Cortland Partners, L.P. ("Cortland LP") is a limited partnership formed under the laws of the State of Delaware with its principal place of business in the State of Georgia. Based on information and belief, Steven DeFrancis is the sole partner of Cortland LP. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Cortland LP is subject to the jurisdiction and venue of this Court.

8.   Cortland Management, LLC ("Cortland Management") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Cortland Management. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Cortland Management is subject to the jurisdiction and venue of this Court.

9.   Cortland Partners, LLC ("Cortland Partners") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in

Georgia. Based on information and belief, Steven DeFrancis is the sole member of Cortland Partners. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Cortland Partners is subject to the jurisdiction and venue of this Court.

10.    Cortland Partners Fund I Manager, LLC ("Fund I Manager") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Fund I Manager. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Fund I Manager is subject to the jurisdiction and venue of this Court.

11.    Cortland Partners Fund I, LLC ("Fund I LLC") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Fund I LLC. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Fund I LLC is subject to the jurisdiction and venue of this Court.

12.    Cortland Partners Fund II Investor, LLC ("Fund II Investor") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Fund II Investor. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Fund II Investor is subject to the jurisdiction and venue of this Court.

13.    Cortland Partners Fund II Manager, LLC ("Fund II Manager") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Fund II Manager. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Fund II Manager is subject to the jurisdiction and venue of this Court.

14.    Cortland Partners Fund II, LLC ("Fund II LLC") is a limited liability company formed under the laws of the State of Georgia with its principal place of business in Georgia. Based on information and belief, Steven DeFrancis is the sole member of Fund II LLC. Steven DeFrancis is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Fulton County, Georgia, who intends to make Georgia his home, and who is an individual citizen of

the State of Georgia. Defendant Fund II LLC is subject to the jurisdiction and venue of this Court.

15.     Diversified Trading Solutions, LLC ("Diversified Trading") is a limited liability company formed under the laws of the State of Florida with its principal place of business in Florida. Based on information and belief, the individual members of Diversified Trading are John J. Koval, Kim Lobdell, and Tom Boyda. John J. Koval is a natural person who is a citizen of the United States, who is physically present in Florida, who resides in St. Lucie County, Florida, who intends to make Florida his home, and who is an individual citizen of the State of Florida. Kim Lobdell is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Cobb County, Georgia, who intends to make Georgia her home, and who is an individual citizen of the State of Georgia. Tom Boyda is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Gilmer County, Georgia, who intends to make Georgia his home, and who is an individual citizen of the State of Georgia. Defendant Diversified Trading is subject to the jurisdiction and venue of this Court.

16.     Level 10 Construction, LLC ("Level 10") is a limited liability company formed with its principal place of business in the State of Georgia. Based on information and belief, Kim Lobdell is the sole individual member of Level 10. Kim Lobdell is a natural person who is a citizen of the United States, who is physically present in Georgia, who resides in Cobb County, Georgia, who intends to make Georgia her home, and who is an individual citizen of the State of Georgia. Based on

information and belief, Level 10 has merged with and into Defendant Diversified Trading. Defendant Level 10 is subject to the jurisdiction and venue of this Court.

17. John J. Koval ("Koval") is a natural person who is a citizen of the United States, who is physically present in Florida, who intends to make Florida his home, and who is an individual citizen of the State of Florida. Koval is subject to the jurisdiction and venue of this Court.

18. Jane Doe, who filed the underlying lawsuit under a pseudonym as a minor victim of sexual assault, is a citizen of the United States, is physically present in Texas, is a resident of Collin County, Texas, intends to make Texas her home, and is an individual citizen of the State of Texas. Defendant Jane Doe is subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

20. This Court may exercise personal jurisdiction over all of the parties joined in this lawsuit.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

22. This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist

between Plaintiffs and Defendants.

23. A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court so that Plaintiffs may have their rights and duties under the relevant contracts of insurance determined and avoid the possible accrual of damages.

24. Each named defendant herein has been joined in compliance with case law requiring that insurers seeking a declaratory judgment bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## THE UNDERLYING LAWSUIT

25. On or about November 14, 2017, Defendant Jane Doe filed a lawsuit against Defendants Castaneda, Cruz, Gonzalez, Eldorado, Cortland LP, Cortland Management, Cortland Partners, Fund I Manager, Fund I LLC, Fund II Investor, Fund II Manager, Fund II LLC, Diversified Trading, Level 10, and Koval in the District Court of Collin County, Texas, Cause Number 401-05503-2017 ("Underlying Lawsuit"). A true and accurate copy of the complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A**. Defendants Eldorado, Cortland LP, Cortland Management, Cortland Partners, Fund I Manager, Fund I LLC, Fund II Investor, Fund II Manager, Fund II LLC, Diversified Trading, Level 10, and Koval are hereinafter referred to collectively as "Cortland Defendants."

26. Defendants Castaneda, Cruz, and Gonzalez were employed by Cortland Defendants as construction workers to renovate the Saxon Woods apartment complex in

McKinney, Collin County, Texas. (Underlying Lawsuit ¶ 4).

27.  The renovation project at Saxon Woods took place over the course of two and a half years. (Underlying Lawsuit ¶ 4).

28.  In November 2015, Defendant Jane Doe resided at Saxon Woods with her mother. (Underlying Lawsuit ¶ 25).

29.  Saxon Woods was owned by the Cortland Defendants. (Underlying Lawsuit ¶ 25).

30.  In the Underlying Lawsuit, Defendant Jane Doe alleges that she was a 16-year-old minor when she was brutally gang-raped by Defendants Castaneda, Cruz, and Gonzalez at Saxon Woods. (Underlying Lawsuit ¶ 2).

31.  Defendant Jane Doe alleges that Defendant Castaneda "lured" her into an empty apartment at Saxon Woods "where three adult male construction workers proceeded to serve her alcohol, drug her and take turns forcibly sexually assaulting her." (Underlying Lawsuit ¶ 2).

32.  The assault occurred sometime after 11:00 pm on Friday, November 13, 2015. (Underlying Lawsuit ¶ 28).

33.  Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "acted intentionally and knowingly when they sexually assaulted [her]," and that those intentional acts resulted in "bodily injury and irreparable psychological harm." (Underlying Lawsuit ¶ 38).

34.  Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "willfully detained [her] for a period of at least three hours by using force, threats of force and by other means which restrained [her] ability to move from one place to

another," that she was "sexually assaulted" during her false imprisonment, that she "never consented to being detained," that she "was a minor . . . incapable of consenting to sexual conduct," and that the perpetrators "had no legal authority or justification to detain [her]." (Underlying Lawsuit ¶¶ 45-47).

35.     Defendant Jane Doe alleges that Defendant Castaneda knew that she was a "child" under the age of consent when he "touched her in an offensive sexual manner prior to raping her . . . ." (Underlying Lawsuit ¶ 39).

36.     Defendants Castaneda, Cruz, and Gonzalez were subsequently arrested and charged with multiple criminal counts arising out of the subject incident, including "sexual assault of a child and indecency with a child involving sexual contact." (Underlying Lawsuit ¶ 34).

37.     Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "acted intentionally and recklessly in causing [her] to suffer from severe emotional distress," fall into a "state of depression," and suffer "from grave psychological and emotional trauma ever since the time of her rape." (Underlying Lawsuit ¶ 49).

38.     In the Underlying Lawsuit, Defendant Jane Doe asserts the following causes of action, all of which arise from the willful, intentional, and criminal conduct of Defendants Castaneda, Cruz, and Gonzalez: Sexual Assault – Infliction of Bodily Injury; False Imprisonment; and Intentional Infliction of Emotional Distress. (Underlying Lawsuit ¶¶ 38-52).

39.     Defendant Jane Doe also asserts the following causes of action against the Cortland Defendants:  Vicarious  Liability;  Negligent  Hiring;  Negligent  Hiring  and

-10-

Negligence Per Se by In-Home Service Company; Negligence; Gross Negligence; Negligence – Premises Liability; and Deceptive Trade & Practices Act (DTPA) Violations. (Underlying Lawsuit ¶¶ 53-84).

## INDEMNIFICATION AGREEMENT

40.    Cortland Improvements entered into a subcontractor agreement with SPI, Inc. d/b/a Southern Property Improvers. A true and accurate copy of the agreement is attached hereto as **Exhibit B**.

41.    Pursuant to the subcontractor agreement, SPI, Inc. provided certain subcontractor services during the renovation project at Saxon Woods.

42.    The subcontractor agreement contained an indemnification provision which provided, in pertinent part, the following:

### 14.    INDEMNIFICATION

Indemnity. For the Work described by this Work Authorization, SPI and Cortland Improvements shall each defend, mutually indemnify and hold each other harmless from claims, demands, actions, and liability for bodily injury, death, property damage or other costs and expenses (including attorney fees) arising out of (i) the intentional, wanton, willful, or negligent acts or omissions of their respective company, its employees, officers, directors, agents, or representatives; or (ii) any claim by third parties for infringement of any intellectual rights; or (iii) the failure by either party to maintain proper insurance. NOTWITHSTANDING, NEITHER PARTY SHALL BE INDEMNIFIED HEREUNDER FOR ANY LOSS, LIABILITY, DAMAGE, OR EXPENSE RESULTING FROM ITS SOLE NEGLIGENCE OR WILLFUL MISCONDUCT.

See **Exhibit B**, p. 3.

## THE INSURANCE CONTRACTS

43.    Home-Owners issued a Commercial General Liability Insurance Policy to SPI, Inc.

d/b/a Southern Property Improvers, policy number 152318-80367146-15, with an effective policy period of June 1, 2015 through June 1, 2016, subject to certain terms, conditions, and applicable law ("CGL Policy"). A true and accurate copy of the CGL Policy is attached hereto as **Exhibit C**.

44.    Auto-Owners issued a Commercial Umbrella Insurance Policy to SPI, Inc. d/b/a Southern Property Improvers, policy number 50-229-154-00, with an effective policy period of January 1, 2015 through January 1, 2016, subject to certain terms, conditions, and applicable law ("Umbrella Policy"). A true and accurate copy of the Umbrella Policy is attached hereto as **Exhibit D**.

45.    Defendants herein, including Castaneda, Cruz, and Gonzalez, seek a defense and indemnity under the CGL Policy and the Umbrella Policy for the claims asserted in the Underlying Lawsuit.

46.    Neither the CGL Policy nor the Umbrella Policy afford any coverage whatsoever for the claims and damages upon which the Underlying Lawsuit is based. Therefore, Plaintiffs have no duty to defend or indemnify any Defendant in the Underlying Lawsuit.

## COMMERCIAL GENERAL LIABILITY POLICY

47.    The CGL Policy issued by Home-Owners provides, in pertinent part, the following:

### COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

   **1.    Insuring Agreement**

      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . . .

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" . . . .

(Commercial General Liability Coverage Form, 55300 (7-05), pp. 1 of 18).

48.   The CGL Policy contains the following relevant exclusions as they relate to Coverage A:

**2.   Exclusions**

This insurance does not apply to:

**a.   Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.   Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

(2)   That the insured would have in the absence of the contract or agreement.

(Commercial General Liability Coverage Form 55300 (7-05), p. 2 of 18).

49.     The CGL Policy issued by Home-Owners provides, in pertinent part, the following:

**COVERAGE  B.    PERSONAL  INJURY  AND  ADVERTISING  INJURY LIABILITY**

**1.  Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies . . . .

    b.  This insurance applies to "personal injury" and "advertising injury" only if:

        (1)     The "personal injury" or "advertising injury" is caused by an  offense arising out of your business;

. . . .

(Commercial General Liability Coverage Form, 55300 (7-05), pp. 1, 6 of 18).

50.     The CGL Policy contains the following relevant exclusions as they relate to Coverage B:

**2.      Exclusions**

This insurance does not apply to "personal injury" or "advertising injury":

**a.      Knowing Violation Of Rights Of Another Or Expected Or Intended Injury**

    (1)     Caused by or at the direction of any insured      with the knowledge that the act would violation the rights of another and would inflict "personal injury" or "advertising injury"; . . .

**d.      Criminal Acts**

Arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured.

**e.      Contractual Liability**

For which the insured has assumed liability in a contract or

> agreement. This exclusion does not apply to liability for
> damages that the insured would have in the absence of the
> contract or agreement. . . .

(Commercial General Liability Coverage Form 55300 (7-05), p. 7 of 18).

51.    The CGL Policy contains the following pertinent provisions related to who

constitutes an insured under the CGL Policy:

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

. . .

   d.    An organization other than a partnership, joint venture or limited
   liability company, you are an insured. Your "executive officers" and
   directors are insureds, but only with respect to   their duties as your
   officers or directors. Your stockholders are       also insureds, but
   only with respect to their liability as stockholders. . .

2.  Each of the following is also an insured:

   a.    Your "employees", other than either your "executive officers" (if
   you are an organization other than a partnership, joint venture or
   limited liability company) . . ., but only for acts within the scope
   of their employment by you or while performing duties related
   to the conduct of your business . . . .

(Commercial General Liability Coverage Form 55300 (7-05), p. 10 of 18).

52.    The CGL Policy contains an endorsement entitled "Blanket Additional Insured",

which provides, in pertinent part, the following:

A.    Under **SECTION II – WHO IS AN INSURED**, the following is
added:

   A person or organization is an Additional Insured, only with respect to
liability arising out of "your work" for that Additional Insured by or for
you:

   1.    If required in a written contract or agreement . . . .

(Commercial General Liability Coverage Form 55373 (1-07), p. 1 of 1).

53.   The CGL Policy provides, in pertinent part, the following definitions:

   **4.**   "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time;. . .

   **10.**   "Insured contract" means:

   f.   That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization . . .

   **14.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   **15.**   "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment. . .

   **27.**   "Your work":

   **a.**   Means:

   **(1)**   Work or operations performed by you or on your behalf;

(Commercial General Liability Coverage Form 55300 (7-05), pp. 14-18 of 18).

## COMMERCIAL UMBRELLA INSURANCE POLICY

54.   The Umbrella Policy issued by Auto-Owners provides, in pertinent part, the following:

## COVERAGE

   A.   We will pay those sums included in ultimate net less that the insured becomes legally obligated to pay as damages because of:

   1. Bodily injury;

2. Property damage;

3. Personal injury; or

4. Advertising injury

to which this insurance applies caused by an incident.

(Commercial Umbrella Policy Coverage Form, 26800 (7-05), pp. 6-7 of 20).

55.    The Umbrella Policy contains the following relevant exclusions:

**EXCLUSIONS**

This policy does not apply to:

      M.    Bodily injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property. . .

      Q.    Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

          1.    Assumed in a contract or agreement that is an insured contract, provided such bodily injury or property damage occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an insured contract; or

          2.    That the insured would have in the absence of the contract or agreement.

      R.    Personal injury or advertising injury;

          1.    Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict personal injury or advertising injury . . .

      S.    Personal injury or advertising injury:

      3.      Arising out of a criminal act or violation of a penal statute ordinance committed by or at the direction of the insured.

      4.      For which the insured has assumed liability in a contract or agreement . . .

(Commercial Umbrella Policy Coverage Form, 26800 (7-05), pp. 12-13 of 20).

56.    The Umbrella Policy extends coverage as follows:

**PERSONS AND ORGANIZATIONS INSURED**

Each of the following is an insured under the policy to the extent described below:

E.    If you are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company:

    1.    You are an insured . . . .

I.    Subject to the terms and conditions of this insurance, any other insured(s) included in the scheduled underlying insurance issued to you and shown in the Declarations, but only to the extent that insurance is provided for such other insured(s) in the scheduled underlying insurance.

(Commercial Umbrella Policy Coverage Form, 26800 (7-05), p. 16 of 20).

57.    The Umbrella Policy provides, in pertinent part, the following definitions:

E.    Bodily injury means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

I.    Incident means either an occurrence or an offense, whichever is the basis of coverage, then:

    1.    When coverage applies on an occurrence basis, incident means an accident with respect to:

        a.    Bodily injury, including damages claimed by any person or organization for care, loss of services or death resulting at anytime from the bodily injury; . . .

2.    When coverage applies on an offense basis, incident means an offense committed by the insured resulting in personal injury or advertising injury, including all such injury sustained by any one person or organization.

L.    Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:

1.    False arrest, detention or imprisonment;

(Commercial Umbrella Policy Coverage Form, 26800 (7-05), pp. 2-4 of 20).

### DECLARATORY JUDGMENT UNDER THE COMMERCIAL GENERAL LIABILITY POLICY

### COUNT ONE
### (CGL Policy)

58.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 57 of this Complaint as if set forth fully herein.

59.    Under the terms of the CGL Policy issued by Home-Owners, there is only coverage for "bodily injury" resulting from an "occurrence" (defined as an "accident"), and there is no coverage for any "bodily injury" that was expected or intended from the standpoint of the insured. (CGL Policy, Coverage A, Exclusion a).

60.    Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages that were not caused by an "occurrence" or accident, or "bodily injury" that was expected or intended by anyone purported to be an insured.

61.    In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "willfully detained" her in an apartment without her consent, "acted intentionally and knowingly when they sexually assaulted [her]", and that

those intentional actions resulted in "bodily injury". (Underlying Lawsuit ¶ 38, 45-46).

62.   In the Underlying Lawsuit, Defendant Jane Doe alleges that the Cortland Defendants committed "intentional and knowing" acts in violation of the Deceptive Trade & Practices Act (DTPA), and that those intentional acts were a "producing cause of Jane Doe's damages" and a "substantial factor in causing her rape." (Underlying Lawsuit ¶¶ 79-84).

63.   Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy because the "bodily injury" claims and damages sought in the Underlying Lawsuit were not caused by an "occurrence" or accident, and the alleged "bodily injury" was intended or expected from persons/entities who may otherwise qualify as an insured under the CGL Policy; consequently, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

**COUNT TWO**
**(CGL Policy)**

64.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 63 of this Complaint as if set forth fully herein.

65.   Under the terms of the CGL Policy issued by Home-Owners, there is no coverage for damages because of "bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," and which would not otherwise be covered by the CGL Policy in the absence of the contract or agreement. (CGL Policy, Coverage A, Exclusion b).

66.     Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages which the insured is obligated to pay solely by reason of the assumption of liability in a contract or agreement, and for which there would not otherwise be coverage absent the contract or agreement.

67.     Under the terms of the subcontractor agreement and indemnification clause attached hereto as **Exhibit B**, SPI, Inc. agreed to assume certain duties and obligations, including legal responsibility for injuries arising out of the "intentional, wanton, willful, or negligent acts or omissions" of its employees. See **Exhibit B**.

68.     To the extent that an insured is liable for any "bodily injury" claims and damages sought in the Underlying Lawsuit by reason of the duties and obligations set forth in the subcontractor agreement and indemnification clause, or any other third party agreement, Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants by virtue of any liability imposed by said agreement unless the CGL Policy would otherwise provide coverage to the insureds absent the existence of the agreement, which it does not.

69.     Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy for any "bodily injury" claims asserted and damages sought in the Underlying Lawsuit because those claims and damages are excluded from coverage under the CGL Policy, and to the extent that any insured is legally responsible for said damages, the responsibility is predicated on the duties and legal obligations the insured assumed under the subcontractor agreement and

indemnification clause, or some other third party agreement; consequently, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT THREE
### (CGL Policy)

70.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 69 of this Complaint as if set forth fully herein.

71.    Under the terms of the CGL Policy issued by Home-Owners, there is coverage for the insured's "employees" "but only for acts within the scope of their employment by [the insured] or while performing duties related to the conduct of [the insured's] business . . . ." (CGL Policy, Section II(2)(a)).

72.    Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages caused by employee acts outside the scope of employment by the insured and unrelated to the conduct of the insured's business.

73.    In the Underlying Lawsuit, Defendant Jane Doe alleges that she was "lured" into an apartment at Saxon Woods at approximately 11:00 pm on Friday, November 13, 2015, that "three adult male construction workers proceeded to serve her alcohol, drug her and take turns forcibly sexually assaulting her," that the construction workers "willfully detained [her] for a period of at least three hours" without her consent, and that she suffered "bodily injury and irreparable psychological harm" as a result of these intentional acts. (Underlying Lawsuit ¶¶ 2, 28, 38, 45-47).

74.    Home-Owners is entitled to a judgment declaring that no Defendant is afforded

coverage under the CGL Policy because the "bodily injury" claims asserted and damages sought in the Underlying Lawsuit were not caused by employees "act[ing] within the scope of their employment by [the insured] or while performing duties related to the conduct of [the insured's] business," and, as a result, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT FOUR
### (CGL Policy)

75.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 74 of this Complaint as if set forth fully herein.

76.    Under the terms of the CGL Policy issued by Home-Owners, there can be no coverage for "personal injury" which is not caused by an offense arising out of [the insured's] business." (CGL Policy, Coverage B(1)(b)(1)).

77.    Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages which were not caused by an offense arising out of the insured's business.

78.    In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "lured" her into an apartment at Saxon Woods at approximately 11:00 pm on November 13, 2015, "willfully detained" her in the apartment for at least three hours without her consent, furnished her with alcohol, "intentionally and knowingly" sexually assaulted her, and "acted intentionally and recklessly in causing [her] to suffer from severe emotional distress." (Underlying Lawsuit ¶¶ 2, 28, 38, 45-46, 49).

79.   When Defendants Castaneda, Cruz, and Gonzalez "intentionally and knowingly" sexually assaulted Defendant Jane Doe and "willfully detained" her into the late evening hours of November 13, 2015, they were not acting within the scope of the insured's business and their actions in no way arose out of the insured's business.

80.   Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit were not caused by an offense arising out of the insured's business, and, as a result, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

### COUNT FIVE
### (CGL Policy)

81.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 80 of this Complaint as if set forth fully herein.

82.   Under the terms of the CGL Policy issued by Home-Owners, there can be no coverage for "personal injury" "caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury'". (CGL Policy, Coverage B, Exclusion a).

83.   Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages which were "caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury'".

84.     In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "lured" her into an apartment at Saxon Woods at approximately 11:00 pm, "willfully detained" her in the apartment for at least three hours without her consent, furnished her with alcohol, "intentionally and knowingly" sexually assaulted her, and "acted intentionally and recklessly in causing [her] to suffer from severe emotional distress." (Underlying Lawsuit ¶¶ 2, 28, 38, 45-46, 49).

85.     Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit were caused by or at the direction of persons/entities who may otherwise qualify as an insured, with the knowledge that their actions would violate the rights of another and would inflict "personal injury"; consequently, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

**COUNT SIX**
**(CGL Policy)**

86.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 85 of this Complaint as if set forth fully herein.

87.     Under the terms of the CGL Policy issued by Home-Owners, there can be no coverage for "personal injury" "arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured." (CGL Policy, Coverage B, Exclusion d).

88.     Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages

"arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured."

89.     In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendant Castaneda knew that she was a "child" under the age of consent when he supplied her with alcohol, drugged her with an unidentified substance, and "brutally raped" her. (Underlying Lawsuit ¶¶ 26, 29-30, 39-45, 50).

90.     Following the alleged sexual assault and false imprisonment of Jane Doe, Defendants Castaneda, Cruz, and Gonzalez were arrested and charged with multiple counts of sexual assault of a child and indecency with a child involving sexual contact. (Underlying Lawsuit ¶ 34).

91.     Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit were caused by a criminal act or violation of a penal code or ordinance committed by or at the direction of persons/entities who may otherwise qualify as an insured, and, as a result, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT SEVEN
### (CGL Policy)

92.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 91 of this Complaint as if set forth fully herein.

93.     Under the terms of the CGL Policy issued by Home-Owners, there is no coverage for damages because of "personal injury" for which the "insured has assumed

liability in a contract or agreement," and for which the insured would not otherwise be liable "in the absence of the contract or agreement." (CGL Policy, Coverage B, Exclusion e),

94.   Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages which the insured is obligated to pay solely by reason of the assumption of liability in a contract or agreement, and for which there would not otherwise be coverage absent the contract or agreement.

95.   Under the terms of the subcontractor agreement and indemnification clause attached hereto as **Exhibit B**, SPI, Inc. agreed to assume certain duties and obligations, including legal responsibility for injuries arising out of the "intentional, wanton, willful, or negligent acts or omissions" of its employees. See **Exhibit B**.

96.   To the extent that an insured is liable for any "personal injury" claims and damages sought in the Underlying Lawsuit by reason of the duties and obligations set forth in the subcontractor agreement and indemnification clause, or any other third party agreement, Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants by virtue of any liability imposed by said agreement unless the CGL Policy would otherwise provide coverage to the insureds absent the existence of the agreement, which it does not.

97.   Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the CGL Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit are excluded from coverage under the

CGL Policy, and to the extent that any insured is legally responsible for said damages, the responsibility is predicated on the duties and legal obligations the insured assumed under the subcontractor agreement and indemnification clause, or some other third party agreement; consequently, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT EIGHT
### (CGL Policy)

98.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 97 of this Complaint as if set forth fully herein.

99.   The CGL Policy was issued in Georgia to a Georgia corporation by Home-Owners, an insurer that does not issue insurance policies in the State of Texas; applying the "most significant relationship" test utilized by Texas courts, the CGL Policy ought to be interpreted in accordance with Georgia law. *See Scottsdale Ins. Co. v. Nat'l Emergency Servs.*, 175 S.W. 3d 284, 293 (Tex. App. – Houston [1st Dist.] 2004) (*citing* the Restatement (Second) of Conflict of Laws § 188); *see also TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 416 (E.D. Tex. 1998); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 883 (5th Cir. 1990); *New York Life Ins. Co. v. Baum*, 700 F.2d 928, 933–34 (5th Cir. 1983).

100.  Under Georgia law, the CGL Policy issued by Home-Owners does not extend coverage for "bodily injury" or "personal injury" claims and damages alleged to have resulted from vicarious liability, negligent hiring, negligence, gross negligence, and premises liability, because those concurrent causes of action would not exist *but for* the intentional actions of Defendants Castaneda, Cruz, and

Gonzalez (i.e., sexual assault of a minor child, false imprisonment, and intentional infliction of emotional distress), actions which are excluded from coverage under the CGL Policy. *See e.g., Jefferson Insurance Co. v. Dunn*, 496 S.E.2d 696, 698-699 (Ga. 1998); *Continental Cas. Co. v. HSI Financial Svcs.*, 466 S.E.2d 4 (Ga. 1996); *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710-711 (Ga. Ct. App. 2011) ("[Plaintiff's] claim for damages from the assault and battery, as well as the premises liability (negligence) claim that would not have arisen *but for* the alleged assault and battery, are not covered by the policy, unless the assault and/or battery was committed by a [insured] employee, employees, or agent while trying to protect persons and/or property."); *Littrell v. Colony Ins. Co.*, 492 S.E.2d 299, 300 (Ga. Ct. App. 1997) (although the complaint asserted claims of negligence, premises liability, and respondeat superior against the insureds, the "injuries which gave rise to the cause of action were plainly premised on the underlying assault and battery," actions that were excluded under the policy and therefore did not trigger coverage of a duty to defend).

101.   Home-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" or "personal injury" claims and damages alleged to have resulted from the concurrent causes of action of vicarious liability, negligent hiring, negligence, gross negligence, and premises liability, because those actions would not exist independent of the intentional actions that are excluded from coverage.

102.   Home-Owners is entitled to a judgment declaring that no Defendant is afforded

coverage under the CGL Policy because the "bodily injury" or "personal injury" claims and damages alleged to have resulted from vicarious liability, negligent hiring, negligence, gross negligence, and premises liability would not exist but for the intentional acts that are excluded from coverage under the CGL Policy; consequently, Home-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT NINE
### (CGL Policy)

103.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 102 of this Complaint as if set forth fully herein.

104.   None of the Defendants are identified as the named insured under the CGL Policy.

105.   None of the Defendants are listed as an additional insured under the CGL Policy.

106.   None of the Defendants qualify as an additional insured under the CGL Policy's Blanket Additional Insured endorsement cited in paragraph 52 herein, because that endorsement only extends coverage with respect to liability arising out of "your work", which would not include the intentional acts alleged in the Underlying Lawsuit (i.e., sexual assault of a minor child, false imprisonment, and intentional infliction of emotional distress) because those intentional acts do not fall within the CGL Policy's definition of "your work".

107.   None of the Defendants otherwise qualify as an insured or additional insured under the CGL Policy.

108.   The Underlying Lawsuit seeks damages for which Defendants are allegedly liable.

109.   The CGL Policy does not provide coverage for damages caused by Defendants, because Defendants are not identified as insureds on the CGL Policy and they do not otherwise qualify as insureds or additional insureds under the CGL Policy.

110.   Home-Owners is entitled to a judgment declaring that Defendants are not insureds under the CGL Policy, and Home-Owners does not have a duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT TEN
## (CGL Policy)

111.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 110 of this Complaint as if set forth fully herein.

112.   In the Underlying Lawsuit, Defendant Jane Doe seeks an award of exemplary (punitive) damages, attorney's fees, and litigation expenses.

113.   The CGL Policy affords no coverage for exemplary damages as such damages are not in compensation for a covered injury, and there can be no recovery for attorney's fees and litigation expenses because the underlying claims upon which the Underlying Lawsuit is based are excluded from coverage. *Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548 S.E.2d 495, 496 (Ga. Ct. App. 2001).

114.   Home-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for the exemplary damages, attorney's fees, or litigation expenses sought in the Underlying Lawsuit, and Home-Owners does not have a duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## DECLARATORY JUDGMENT UNDER THE COMMERCIAL UMBRELLA INSURANCE POLICY

### COUNT ELEVEN
### (Umbrella Policy)

115.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 114 of this Complaint as if set forth fully herein.

116.    Under the terms of the Umbrella Policy issued by Auto-Owners, there is only coverage for damages because of "bodily injury" resulting from an "incident" (defined as an "accident"), and there is no coverage for "bodily injury" that was expected or intended from the standpoint of the insured. (Umbrella Policy, Exclusion M).

117.    Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" that was not caused by an "incident" or accident, or for "bodily injury" that was expected or intended by anyone purported to be an insured.

118.    In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "willfully detained" her in an apartment without her consent, "acted intentionally and knowingly when they sexually assaulted [her]" and that those intentional actions resulted in "bodily injury". (Underlying Lawsuit ¶ 38, 45-46).

119.    In the Underlying Lawsuit, Defendant Jane Doe alleges that the Cortland Defendants committed "intentional and knowing" acts in violation of the Deceptive Trade & Practices Act (DTPA), which was a "producing cause of Jane Doe's

damages" and a "substantial factor in causing her rape." (Underlying Lawsuit ¶¶ 79-84).

120.    Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Umbrella Policy because the "bodily injury" claims asserted and damages sought in the Underlying Lawsuit were not caused by an "incident" or accident, and the alleged "bodily injury" was intended or expected from persons/entities who may otherwise qualify as an insured under the Umbrella Policy; consequently, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT TWELVE
### (Umbrella Policy)

121.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 120 of this Complaint as if set forth fully herein.

122.    Under the terms of the Umbrella Policy issued by Auto-Owners, there is no coverage for damages because of "bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," and which would not otherwise be covered by the Umbrella Policy in the absence of the contract or agreement. (Umbrella Policy, Exclusion Q).

123.    Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" claims and damages which the insured is only obligated to pay by reason of the assumption of liability in a contract or agreement, and for which there would not otherwise be coverage absent the contract or agreement.

124.    To the extent that an insured is liable for any "bodily injury" claims and damages sought in the Underlying Lawsuit by reason of the duties and obligations set forth in the subcontractor agreement and indemnification clause attached hereto as **Exhibit B**, or any other third party agreement, Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants by virtue of any liability imposed by said agreement unless the Umbrella Policy would otherwise provide coverage to the insureds absent the existence of the agreement, which it does not.

125.    Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Umbrella Policy for any "bodily injury" claims asserted and damages sought in the Underlying Lawsuit because those claims and damages are excluded from coverage under the Umbrella Policy, and to the extent that any insured is legally responsible for those damages, it is solely due to the subcontractor agreement and indemnification clause, or some other third party agreement; consequently, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT THIRTEEN
### (Umbrella Policy)

126.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 125 of this Complaint as if set forth fully herein.

127.    Under the terms of the Umbrella Policy issued by Auto-Owners, there can be no coverage for "personal injury" "caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict

'personal injury'". (Umbrella Policy, Exclusion R(1)).

128.   Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages which were "caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury'".

129.   In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendants Castaneda, Cruz, and Gonzalez "lured" her into an apartment at Saxon Woods at approximately 11:00 pm, "willfully detained" her in the apartment for at least three hours without her consent, furnished her with alcohol, "intentionally and knowingly" sexually assaulted her, and "acted intentionally and recklessly in causing [her] to suffer from severe emotional distress." (Underlying Lawsuit ¶¶ 2, 28, 38, 45-46, 49).

130.   Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Umbrella Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit were caused by or at the direction of persons/entities who may otherwise qualify as an insured, with the knowledge that their actions would violate the rights of another and would inflict "personal injury"; consequently, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT FOURTEEN
### (Umbrella Policy)

131.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 130 of this Complaint as if set forth fully herein.

132.   Under the terms of the Umbrella Policy issued by Auto-Owners, there can be no

coverage for "personal injury" "arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured." (Umbrella Policy, Coverage S(3)).

133.   Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages "arising out of a criminal act or violation of a penal statute or ordinance committed by or at the direction of the insured."

134.   In the Underlying Lawsuit, Defendant Jane Doe alleges that Defendant Castaneda knew that she was a "child" under the age of consent when he supplied her with alcohol, drugged her with an unidentified substance, and "brutally raped" her. (Underlying Lawsuit ¶¶ 26, 29-30, 39-45, 50).

135.   Following the sexual assault and false imprisonment of Jane Doe, Defendants Castaneda, Cruz, and Gonzalez were arrested and charged with multiple counts of sexual assault of a child and indecency with a child involving sexual contact. (Underlying Lawsuit ¶ 34).

136.   Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Umbrella Policy because the "personal injury" claims asserted and damages sought in the Underlying Lawsuit were caused by a criminal act or violation of a penal code or ordinance committed by or at the direction of persons/entities who may otherwise qualify as an insured, and, as a result, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT FIFTEEN
### (Umbrella Policy)

137. Plaintiffs hereby reallege and incorporate paragraphs 1 through 136 of this Complaint as if set forth fully herein.

138. Under the terms of the Umbrella Policy issued by Auto-Owners, there is no coverage for damages because of "personal injury" for which the "insured has assumed liability in a contract or agreement," and for which the insured would not otherwise be liable "in the absence of the contract or agreement." (Umbrella Policy, Exclusion S(3)),

139. Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "personal injury" claims and damages which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement, and for which there would not otherwise be coverage absent the contract or agreement.

140. To the extent that an insured is liable for any "personal injury" claims and damages sought in the Underlying Lawsuit by reason of the duties and obligations set forth in the subcontractor agreement and indemnification clause attached hereto as **Exhibit B**, or any other third party agreement, Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants by virtue of any liability imposed by said agreement unless the Umbrella Policy would otherwise provide coverage to the insureds absent the existence of the agreement, which it does not.

141. Auto-Owners is entitled to a judgment declaring that no Defendant is afforded

coverage under the Umbrella Policy for any "personal injury" claims asserted and damages sought in the Underlying Lawsuit because those claims and damages are excluded from coverage under the Umbrella Policy, and to the extent that any insured is legally responsible for those damages, it is solely due to the subcontractor agreement and indemnification clause, or some other third party agreement; consequently, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT SIXTEEN
### (Umbrella Policy)

142.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 141 of this Complaint as if set forth fully herein.

143.   The Umbrella Policy was issued in Georgia to a Georgia corporation by Auto-Owners, an insurer that does not issue insurance policies in the State of Texas; applying the "most significant relationship" test utilized by Texas courts, the Umbrella Policy ought to be interpreted in accordance with Georgia law. *See Scottsdale Ins. Co. v. Nat'l Emergency Servs.*, 175 S.W. 3d 284, 293 (Tex. App. – Houston [1st Dist.] 2004) (*citing* the Restatement (Second) of Conflict of Laws § 188); *see also TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 416 (E.D. Tex. 1998); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 883 (5th Cir. 1990); *New York Life Ins. Co. v. Baum*, 700 F.2d 928, 933–34 (5th Cir. 1983).

144.   Under Georgia law, the Umbrella Policy issued by Auto-Owners does not extend coverage for "bodily injury" or "personal injury" claims and damages alleged to have resulted from vicarious liability, negligent hiring, negligence, gross

negligence, and premises liability, because those concurrent causes of action would not exist *but for* the intentional actions of Defendants Castaneda, Cruz, and Gonzalez (i.e., sexual assault of a minor child, false imprisonment, and intentional infliction of emotional distress), actions which are excluded from coverage under the Umbrella Policy. *See e.g., Jefferson Insurance Co. v. Dunn*, 269 Ga. 213, 216 (1998); *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260 (1996); *Landmark Am. Ins. Co. v. Khan*, 307 Ga. App. 609 (2011); *Littrell v. Colony Ins. Co.*, 228 Ga. App. 552 (1997).

145.  Auto-Owners has no obligation to provide a defense to the Underlying Lawsuit or to indemnify the named Defendants for "bodily injury" or "personal injury" claims and damages alleged to have resulted from the concurrent causes of action of vicarious liability, negligent hiring, negligence, gross negligence, and premises liability.

146.  Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage under the Umbrella Policy for any "bodily injury" or "personal injury" claims and damages alleged to have resulted from vicarious liability, negligent hiring, negligence, gross negligence, and premises liability; consequently, Auto-Owners has no duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT SEVENTEEN
### (Umbrella Policy)

147.  Plaintiffs hereby reallege and incorporate paragraphs 1 through 146 of this Complaint as if set forth fully herein.

148.   None of the Defendants are identified as the named insureds under the Umbrella Policy.

149.   None of the Defendants are listed as an additional insureds under the Umbrella Policy.

150.   None of the Defendants otherwise qualify as an insured or additional insured under the Umbrella Policy.

151.   The Underlying Lawsuit seeks damages for which Defendants are allegedly liable.

152.   The Umbrella Policy does not provide coverage for damages caused by Defendants, because Defendants are not identified as insureds on the Umbrella Policy and they do not otherwise qualify as insureds or additional insureds under the Umbrella Policy.

153.   Auto-Owners is entitled to a judgment declaring that Defendants are not covered as insureds under the Umbrella Policy, and that Auto-Owners does not have a duty to defend or indemnify any of the Defendants in the Underlying Lawsuit.

## COUNT EIGHTEEN
### (Umbrella Policy)

154.   Plaintiffs hereby reallege and incorporate paragraphs 1 through 153 of this Complaint as if set forth fully herein.

155.   In the Underlying Lawsuit, Defendant Jane Doe seeks an award of exemplary (punitive) damages, attorney's fees, and litigation expenses.

156.   The Umbrella Policy affords no coverage for exemplary damages as such damages are not in compensation for a covered injury, and there can be no recovery for attorney's fees and litigation expenses because the underlying claims upon which

the Underlying Lawsuit is based are excluded from coverage. *Bituminous Cas. Corp. v. N. Ins. Co. of N.Y.*, 548 S.E.2d 495, 496 (Ga. Ct. App. 2001).

157.    Auto-Owners is entitled to a judgment declaring that no Defendant is afforded coverage for the punitive damages, attorney's fees or litigation expenses sought in the Underlying Lawsuit.

## PRAYER

**WHEREFORE**, Plaintiffs pray that this Court enter judgment finding that they have no duty to defend or indemnify any Defendant against the claims asserted in the Underlying Lawsuit; that this Court bind each and every named party herein by said judgment; that Plaintiffs be awarded costs in this action; and for such further relief as this Court may deem just and appropriate.

This 21st day of June, 2018.

Respectfully submitted,

ROBERTS MARKEL WEINBERG BUTLER HAILEY PC

*/s/ Gregg S. Weinberg*
_____
GREGG S. WEINBERG
TEXAS STATE BAR NO. 21084150
FRANK O. CARROLL III
TEXAS STATE BAR NO. 24082785
2800 POST OAK BLVD, 57TH FLOOR
HOUSTON, TX  77056
TELEPHONE: (713) 840-1666
FAX: (713) 840-9404
GWEINBERG@RMWBHLAW.COM
FCARROLL@RMWBHLAW.COM
**ATTORNEYS FOR PLAINTIFFS**

KENDALL LAW GROUP, LLC


 /s/ Chad M. Brock
MICHAEL C. KENDALL
GEORGIA BAR NO. 414030
(PRO HAC VICE APPLICATION PENDING)
CHAD M. BROCK
GEORGIA BAR NO. 357719
(PRO HAC VICE APPLICATION PENDING)
3152 GOLF RIDGE BLVD., SUITE 201
DOUGLASVILLE, GEORGIA 30135
TELEPHONE: 770-577-3559
FACSIMILE: 770-577-8113
MCKENDALL@KENDALL-LAWGROUP.COM
CMBROCK@KENDALL-LAWGROUP.COM
**ATTORNEYS FOR PLAINTIFFS**